**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 1:20-cv-21615-KMM/Becerra

MARJORIE ROBINSON,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## REPORT AND RECOMMENDATION[1] ON MARJORIE ROBINSON'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255

**THIS CAUSE** came before the Court upon Marjorie Robinson's ("Robinson") Motion and Memorandum in Support of Motion Under 28 U.S.C. § 2255 (the "Motion"). ECF Nos. [1], [3]. The United States of America (the "Government") responded to the Motion (the "Response"). ECF No. [19]. Thereafter, Robinson filed her Reply to the Government's Response (the "Reply"). ECF No. [20]. The Motion is ripe for disposition. After careful review of the Motion, the relevant authorities, and the record, for the reasons discussed below, it is hereby **RECOMMENDED** that the Motion, ECF Nos. [1], [3], be **DENIED**.

### I.   BACKGROUND

Robinson was the owner, director, and pharmacist-in-charge of ASC Pharmacy. ECF No. [19-5] at 47.[2]   Under her ownership and direction, "ASC Pharmacy designed, formulated, manufactured, and sold topical medications comprised of drugs, binders, and other agents

---

[1] This matter was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge. ECF No. [6].

[2] All citations to the "Criminal ECF" refer to the docket in Robinson's underlying criminal case, *United States v. Robinson*, No. 1:18-cr-20554-KMM.

1

combined in such a way as to create a medicated cream known as compounded creams." *Id.* Robinson and her co-conspirators submitted false and fraudulent claims and agreed to pay kickbacks in order to "maximize financial reimbursement without regard to medical necessity." *Id.* at 47-48. On June 26, 2018, Robinson was charged in a nine-count indictment, charging: (1) conspiracy to commit health care fraud and wire fraud, in violation of 18 U.S.C. § 1349 ("Count 1"); (2) five counts of health care fraud, in violation of 18 U.S.C. § 1347 ("Counts 2–6"); (3) conspiracy to defraud the United States and pay and receive health care kickbacks, in violation of 18 U.S.C. § 371 ("Count 7"); and (4) two counts of payment of kickbacks in connection with a government health care program, in violation of 42 U.S.C. § 1320a-7b(b)(2)(A) ("Counts 16–17"). Criminal ECF No. [3].

### A. Robinson's Guilty Plea and Sentencing

After the Indictment, Robinson and the Government entered into a plea agreement (the "Plea Agreement"). Criminal ECF Nos. [87], [88]. The relevant terms of the Plea Agreement are as follows. In exchange for pleading guilty to Count 1 of the Indictment, the Government agreed to seek dismissal of Counts 2 through 7, and 16 through 17, after sentencing. Criminal ECF No. [88] ¶ 1. The Plea Agreement included an acknowledgment that Robinson had read the charges against her and that they had been fully explained to her by her attorney. *Id.* Robinson also admitted that the Government could prove, beyond a reasonable doubt, that (1) she "participated in the conspiracy to commit health care fraud;" (2) her participation in the conspiracy "resulted in an actual or intended loss to health care benefit programs of more than $1,500,000.00 and less than $3,500,000.00;" (3) the government health care programs lost more than $1,000,000.00 as a result of the conspiracy; (4) she was "a manager or supervisor of the criminal activity;" and (5) she "abused a position of public or private trust, or used a special skill, in a manner that significantly

facilitated the commission or concealment of the offense." *Id*. ¶ 13.  Based on these admissions, Robinson and the Government agreed to make certain joint recommendations that resulted in an offense level of twenty-six.  *Id*. ¶¶ 14–15.  Robinson also agreed to waive her right to appeal her sentence, provided that her sentence did not exceed the maximum permitted by statute and was not the result of an upward departure or variance from the Sentencing Guidelines range, or the Government filed an appeal.  *Id*. ¶ 23.

The Government and Robinson also filed an Agreed Factual Basis for Guilty Plea (the "Factual Proffer"), which established all the essential elements of the crime to which Robinson was pleading guilty.  Criminal ECF No. [89].  In the Factual Proffer, which Robinson signed, she admitted, among other things, that she "was a one-third owner, Director, Secretary and the Pharmacist-in-Charge, of ASC Pharmacy" which, under her and others' ownership and direction, created and sold "medically unnecessary" compounded creams designed to "maximize financial reimbursement to ASC Pharmacy" through false and fraudulent claims.  *Id.* at 1–3.

On September 14, 2018, Robinson appeared before Magistrate Judge Andrea M. Simonton with her counsel Robert Nicholson ("Mr. Nicholson"), from the law firm Nicholson & Eastin, LLP, and Peter Del Toro ("Mr. Del Toro"), from the law firm of Del Toro Law Group, LLC, for a change of plea hearing (the "Plea Hearing").  Criminal ECF No. [87].  As part of the plea colloquy in accordance with Rule 11 of the Federal Rules of Criminal Procedure, Robinson affirmed that she had signed the Plea Agreement and that she agreed with all of its provisions, including those that set out her offense conduct.  ECF No. [19-5] at 12:1–19, 13:22–14:6.  The Court asked Robinson if she agreed that the Government would be able to prove beyond a reasonable doubt, if the matter proceeded to trial, that she participated in a conspiracy to commit health care fraud, and Robinson answered in the affirmative.  *Id.* at 20:4–14.  Judge Simonton also reviewed in detail the

elements for the offense that Robinson was pleading guilty to, and Robinson acknowledged that she understood the elements. *Id.* at 38:9–41:22. The Court then asked Robinson, who was under oath, whether she had reviewed and discussed the Factual Proffer with her attorney before she signed it, and Robinson replied that she had. *Id.* at 44:1–12. When the Court asked if everything in the Factual Proffer was "true and correct," Robinson responded, "Yes." *Id.* at 44:13–15. The Court also asked the Government to recite the factual basis for the plea. *Id.* at 45:1–51:23. After the recitation, the Court asked Robinson if she had any additions or corrections to the factual basis that was given at the hearing, and Robinson stated that she did not. *Id.* at 51:17–23.

On October 3, 2018, Judge Simonton entered a Report and Recommendation on Robinson's change of plea, recommending that the District Court accept Robinson's guilty plea and that she be adjudicated guilty of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count 1). Criminal ECF No. [102]. No objections were filed to the Report and Recommendation, and the District Court adopted the Report and Recommendation on October 23, 2018, adjudicating her guilty of conspiracy to commit health care fraud. Criminal ECF No. [112].

A Final Pre-Sentence Investigation Report ("PSI") was prepared and filed prior to Robinson's sentencing. Criminal ECF No. [133]. The PSI detailed Robinson's offense, including a factual summary of her offense conduct, an assessment of her role in the criminal activity, and a description of the victim impact of her conduct. *Id.* ¶¶ 1–47. The PSI concluded that her base offense level was six. *Id.* ¶ 50. Because Robinson was accountable for a loss exceeding $1,500,000.00, the offense level increased by sixteen levels. *Id.* ¶ 51. A two-level increase was also recommended because the offense involved a government health care program. *Id.* ¶ 52. An additional two-level "special skill" enhancement was also recommended. *Id.* ¶ 55. The PSI also recommended a four-level increase based on Robinson's involvement as a leader or organizer of

the criminal activity that involved five or more participants. *Id.* ¶ 54.[3]  After reducing Robinson's offense level by two points for her acceptance of responsibility, the PSI concluded that the offense level was twenty-eight. *Id.* ¶¶ 59–60.  Based on that offense level and a criminal history category of I, the advisory guideline range was 78 to 97 months of imprisonment. *Id.* ¶ 97.

Counsel filed a Sentencing Memorandum and Objections to Presentence Investigation Report (the "Sentencing Memorandum") on behalf of Robinson.  Criminal ECF No. [134].  Specifically, Robinson objected to the suggested "4-level role enhancement as an organizer/leader," given the Parties' agreement in the Plea Agreement to seek a 2-level enhancement as a manager/supervisor. *See id.* at 3–6.  Although Robinson disputed the four-level role enhancement as an organizer/leader, she did not request a downward departure or variance. *See id.* at 6–7.  Robinson also argued that "the total offense level in her case should be level 26, and as a first-time offender, the advisory guideline range is 63 to 78 months" based on the sentencing factors. *See id.* at 6–12.  Robinson also submitted twelve letters in support of her character to the Court, as well as files detailing her medical history.  Criminal ECF No. [134–1].

The Government did not respond to Robinson's Sentencing Memorandum.  An Addendum to the PSI was prepared and filed prior to sentencing, which noted objections submitted by Robinson, and provided for certain changes to the PSI, accordingly. *See* ECF No. [133-1].  At sentencing, counsel reiterated its position regarding the role enhancement, noting that the Government did not oppose a two-level role enhancement.  ECF No. [19-1] at 2:14–3:1.

On November 29, 2018, the Court sentenced Robinson to a total of seventy eight months of imprisonment as to Count 1 of the Indictment, followed by three years supervised release.

---

[3] The PSI also notes that "[t]he parties agreed to a two level aggravating role enhancement, pursuant to § 3B1.1(c)" but that "based on the offense information provided by the government, a four level role enhancement was recommended, pursuant to § 3B1.1(a)." *Id.* ¶ 108.

Criminal ECF Nos. [143], [144].  Although the PSI calculated the advisory guideline range of imprisonment to be 78 to 97 months, *see* Criminal ECF No. [133] ¶ 97, the Court stated at sentencing that "[t]he probation has calculated an offense level of 28, criminal history category of [I].  The guideline range is 63 to 78 months; is that a correct calculation of the guidelines?"  ECF No. [19-1] at 15:10–13.  Although both Robinson's counsel and the Government reiterated their request, "pursuant to the plea agreement, [that Robinson be sentenced to] the low end of the guidelines at the offense level 26, which [would be] 63 months," the Court denied the parties' objection that the four-level role enhancement should instead be two-levels and, in sentencing Robinson to the high end of the guideline range, as opposed to the low end, the Court considered the degree of sophistication of the crime and the impact of the crime on "people that are in genuine medical need."  *Id.* at 10:3–15:6, 20:19–21, 21:13–22:13.

### B. The Instant Motion

Robinson filed the instant Motion seeking relief pursuant to 28 U.S.C. § 2255.  ECF Nos. [1], [3].  Specifically, Robinson's Motion seeks relief based on two claims of ineffective assistance of counsel: (1) that counsel failed to advise Robinson that she had the unilateral right to withdraw her guilty plea until it was accepted by the District Court, and that had counsel done so there is a reasonable probability she would have withdrawn her guilty plea; and (2) that counsel failed to obtain a continuance, and had counsel succeeded, there is a reasonable probability Robinson would not have pled guilty.  ECF No. [3] at 8–12.

As to Robinson's first argument, she asserts that during the forty days between pleading guilty in front of Magistrate Judge Simonton and the District Judge's acceptance of her plea, she had the right to withdraw her plea for "any reason or no reason" under Federal Rule of Criminal Procedure 11(d)(1).  ECF No. [3] at 1–2.  Robinson states she "immediately regretted" her decision

to plead guilty, that "her attorneys watched her openly weep" following her plea colloquy in front of Magistrate Judge Simonton, and that "the only reason she did not withdraw her guilty plea is because her attorneys failed to advise her of this right." *Id.* at 1–2, 10–11.  Further, Robinson states that, based on conversations with her attorneys, she believed she could not withdraw her plea after pleading guilty in front of the Magistrate Judge, and in fact, counsel never discussed the unliteral right to withdraw the plea with her. *Id.* at 5.  Robinson also argues that her attorneys knew, both before and after the plea colloquy, that Robinson did not want to plead guilty. *Id.* at 9. She notes that she expressed her regret of pleading guilty to "virtually everyone," including some friends of whom Robinson submitted two declarations and two letters as support. *See id.* at 10, 22–30.  Robinson maintains that she was "generally dissatisfied with her decision to plead guilty" and was particularly concerned that "she was not advised that her entire retirement savings were subject to confiscation" due to her plea. *Id.* at 10.  She argues that she was prejudiced because "there is a reasonable probability that she would have withdrawn her plea . . . if she had known of her absolute right to withdraw." *Id.*

For Robinson's second argument, she posits that counsel was ineffective for failing to obtain a continuance, and that absent this failure, there is a reasonable probability that she would have gone to trial instead of pleading guilty. *Id.* at 11–12.  Facing a "short trial turnaround," with "multiple terabytes of data," Robinson argues that a continuance was clearly needed for adequate trial preparation, but that counsel's "two motions for continuance were deficient in that they provided no evidence in support of the motions." *Id.* at 11.  Robinson asserts "the Court likely would have granted the continuance" if counsel had "properly supported" the unopposed motion, as was Robinson's burden, by providing more than "naked arguments." *Id.* at 12.

In its Response to the Motion, the Government challenges both of Robinson's claims, arguing that counsel's performance was objectively reasonable, and Robinson cannot establish prejudice.  ECF No. [19].  Along with its Response, the Government filed affidavits of Robinson's three attorneys, Mr. Nicholson, ECF No. [19-2], Mr. Del Toro, ECF No. [19-3], and Mr. Alan, ECF No. [19-4], the sentencing transcript, ECF No. [19-1], and the change of plea transcript, ECF No. [19-5].  As to Robinson's argument that counsel failed to advise her of her unilateral right to withdraw, the Government counters by stating that the affidavits of Mr. Nicholson and Mr. Del Toro show that Robinson and counsel discussed the right to withdraw "on at least three separate occasions," including when reviewing Robinson's Plea Agreement, which "contained a provision that provided for a severe penalty if she did seek to withdraw her plea after signing the agreement." ECF Nos. [19] at 5; [19-2] ¶¶ 9–13; [19-3] ¶ 5.  Counsel also discussed the financial aspects of the Plea Agreement several times, including as to restitution and forfeiture.  ECF Nos. [19] at 6; [19-2] ¶ 8.  In short, the Government maintains this representation was objectively reasonable.  ECF No. [19] at 6.

Second, regarding Robinson's continuance argument, the Government cites to Mr. Nicholson's affidavit stating that following denial of the two motions for continuance, counsel "filed four affidavits 'setting forth the discovery review, trial preparation and the prejudice [Robinson] would suffer if a continuance was not granted.'"  *Id.* (quoting ECF No. [19-2] ¶ 6). Moreover, the Government argues, "courts are afforded broad discretion in determining whether a continuance should be granted."  *Id.*  Again, the Government argues that this shows reasonable performance by counsel.  *Id.*  In addition, the Government argues that Robinson cannot demonstrate prejudice, "because her allegations are mere conclusory statements without any factual support." *Id.* at 7.  Indeed, those allegations "contradict her sworn statements on the record"

at her Plea Hearing, where she indicated she had reviewed and understood her Plea Agreement and was pleading voluntarily. *Id.* at 7–8.

## II.    Evidentiary Hearing

Robinson argues her "allegations are well supported by the record, and if accepted as true, would entitle her to § 2255 relief" and thus she is entitled to an evidentiary hearing. ECF No. [3] at 13. Further, in Robinson's Reply, she argues that an evidentiary hearing is required because of conflicts between the declarations that she submitted and the affidavits of Robinson's counsel that the Government filed. ECF No. [20] at 2–4.

Pursuant to section 28 U.S.C. § 2255, "the court shall grant a hearing to determine the issues and make findings of fact and conclusions of law 'unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Holmes v. United States*, 876 F.2d 1545, 1552–53 (11th Cir. 1989) (quoting 28 U.S.C. § 2255). Because of competing facts in Robinson's declarations and the Government's affidavits, the Court held a hearing on December 13, 2021, at which Robinson and Mr. Nicholson testified. *See* ECF No. [29].

At the hearing, Robinson repeatedly stated that she thought the plea was "a done deal" such that she could not withdraw her plea. *See, e.g.*, ECF No. [31] at 29:7–19, 36:23–37:10. Robinson testified that she did not learn that she could have withdrawn her plea until she met her current attorney in the year following her sentencing. *Id.* at 36:23–37:10. Robinson testified, "I want to be very clear . . . [w]hen I took the plea in front of the magistrate, I was unaware that I could withdraw my plea." *Id.* at 32:3–7. When asked if she recalled the language in the Plea Agreement concerning conduct that would constitute a breach of the Plea Agreement, Robinson responded that she "recall[ed the language] after the fact," noting that "[e]verything was in slow motion." *Id.* at 15:8–13. As to whether she informed counsel of her desire to withdraw her plea, Robinson

testified that "[i]t was pointless to tell my attorneys since they are the ones who recommended the plea deal" and "I couldn't tell them that because I didn't know that I had that as an option." ECF No. [31] at 29:7–19.

Robinson's testimony that she was not advised as to her right to withdraw her plea was not credible. Indeed, at various times during the hearing, she indicated that she could not recall certain key events. For instance, she testified, "I don't know the details of what I understood. I don't recall. I don't know if I understood . . . the implications of that document." *Id.* at 16:1–3. She repeatedly stated that everything felt as if it was in "slow motion." *See, e.g., id.* at 18:16–18. Further, when her attorney asked her if her trial counsel ever advised her of the standards to withdraw her plea, Robinson responded, "[s]o the standards that you're telling me about, I don't believe we had that discussion. And I don't recall." *Id.* at 36:23–37:17. Similarly, when asked if her attorneys had advised her, at any point, that she could withdraw her plea at any time until sentencing, she responded, "I just know I didn't know that. So I don't recall if they told me. But what I do know is that when I pled guilty in front of the magistrate, I was not advised that I could withdraw my plea." *Id.* at 31:15–22. Thus, although she repeatedly stated that she did not know that she could withdraw her plea for any reason or no reason after pleading to the magistrate, *see, e.g., id.* at 16:3–5, she also testified that she could not remember and did not know if she was told.

On the other hand, Mr. Nicholson provided credible testimony that he reviewed the Plea Agreement with Robinson three times. First, he noted that he "had reviewed a substantially similar plea agreement . . . at least several weeks prior to . . . the calendar call" but Robinson decided not to plea at that time. *Id.* at 40:19–41:1. Then, after Robinson informed Mr. Nicholson on the date of the calendar call that she wished to plea, he sent her the Plea Agreement and they "reviewed it paragraph by paragraph." *Id.* at 41:2–7. When he reviewed the Plea Agreement with Robinson,

Mr. Nicholson "[v]ery specifically" recalled discussing the provision of the Plea Agreement "that laid out certain consequences should Ms. Robinson decide to not go through with the plea after she signed it" because in his "personal estimation [the consequences] were pretty Draconian." *Id.* at 41:8–25. Mr. Nicholson testified that he "spent a considerable amount of time with [Robinson] on this paragraph and told her that she should not . . . go forward unless she was completely confident that was how she wanted to proceed because . . . there [were] significant consequences if she were not to go forward with the plea." *Id.* at 42:1–8. Mr. Nicholson testified that he reviewed the Plea Agreement with Robinson again on the morning of the Plea Hearing, during which he "went over the plea agreement with her again paragraph by paragraph and had her initial every page of the plea agreement." *Id.* at 42:12–18. Further, Mr. Nicholson testified that he explained to Robinson "that ordinarily a defendant has the right to withdraw the plea at any time prior to the Court imposing sentence . . . [but] in this particular plea agreement, that the consequence of doing so in her case when she signed this plea agreement was that it would have very significant consequences." *Id.* at 44:2–9. Because of this provision in the Plea Agreement, he testified that he went through Robinson's right to withdraw the plea with her. According to Mr. Nicholson, Robinson never indicated that she wanted to withdraw her guilty plea, and he testified that they were focused on sentencing following her plea. *Id.* at 42:19–43:4.

Consequently, Mr. Nicholson testified that he did not "explain th[e] distinction between withdrawing before the district judge accepted the plea or after the district judge accepted the plea to Ms. Robinson" since "she never expressed any desire or interest in withdrawing her plea at any point in time." *Id.* at 46:25–47:4. Further, although Mr. Nicholson testified that he understood the "distinction [in the standard for withdrawing a plea] between the time period once the plea's been accepted by the district judge and after . . . [p]ursuant to Rule 11," he also testified that he

has not "personally been involved with [a request to withdraw a plea where] the district judge den[ied] the request." *Id.* at 46:13–24.

## III.    DISCUSSION

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court that imposed the sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack.  28 U.S.C. § 2255.  If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*.  To obtain this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel.  U.S. Const., amend. VI.  A claim for ineffective assistance of counsel, including those that challenge guilty pleas, is subject to the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985) (noting that the two-part standard set forth in *Strickland* applies to guilty plea challenges based on ineffective assistance of counsel).  Specifically, *Strickland* requires that a criminal defendant show that "(1) 'counsel's representation fell below an objective standard of reasonableness' and (2) that such failure prejudiced him in that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Pease,* 240 F.3d 938, 941 (11th Cir. 2001) (quoting *Strickland*, 466 U.S. at 687–88).

As to the first prong, deficient performance is performance that falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. That is, actions that "no competent counsel would have taken." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted) (citing *Holladay v. Haley*, 209 F.3d 1243, 1253 n.6 (11th Cir. 2000)). However, in proving that counsel's actions were deficient, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To that extent, "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger" and the challenged actions may be considered sound strategy. *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (footnote omitted) (citing *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998)); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

As to the second prong, a defendant establishes prejudice by showing that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id*. Within the context of pleas, the defendant must demonstrate that but for counsel's constitutionally ineffective performance, the defendant "would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

A defendant must satisfy both the deficiency and prejudice prongs set forth in *Strickland* to obtain relief on an ineffective assistance of counsel claim; failure to establish either prong is fatal and makes it unnecessary to consider the other one. *Strickland*, 466 U.S. at 697. The Eleventh

Circuit has recognized that, given the principles and presumptions associated with ineffective assistance claims, "the cases in which habeas petitioners can properly prevail are few and far between." *Chandler*, 218 F.3d at 1313 (alteration omitted) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995)). The burden of persuasion on the movant is preponderance of the evidence. *Id.*

### A. Robinson's Claim Of Ineffective Assistance Of Counsel For Counsel's Failure To Advise Robinson Of Her Unilateral Right To Withdraw Her Plea (Claim I) Should Be Denied.

As an initial matter, pursuant to Federal Rule of Criminal Procedure 11(d)(1), a defendant may withdraw a plea "for any or no reason" before a district court accepts the plea. *See Henry v. United States*, No. 2:06CR121FTM29DNF, 2010 WL 1850448, at *3 (M.D. Fla. May 7, 2010) ("Petitioner correctly asserts that until the guilty plea is accepted by the district judge he had an absolute right to withdraw the guilty plea for any or no reason.") (citing Fed. R. Crim. P. 11(d)(1)). A defendant can also withdraw a plea after entering his guilty plea, but prior to sentencing, if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Although which standard applies if a defendant seeks to withdraw a guilty plea between the time a plea hearing is held before a Magistrate Judge and the time that a District Court adopts a Magistrate Judge's Report and Recommendation is not an issue that has been squarely addressed in this Circuit, it would appear that the standard allowed under Rule 11(d)(1) would be the correct one, given that there is no finding of guilty until the District Court adjudicates a defendant guilty of an offense. *See United States v. Cabezas*, 797 Fed. App'x. 415, 418 (11th Cir. 2019), *cert. denied sub nom. Fernando Cabezas v. United States*, 141 S. Ct. 1112 (2021), *reh'g denied sub nom. Cabezas v. United States*, 141 S. Ct. 1757 (2021) (reasoning that defendant "lost the right to withdraw his plea 'for any or no reason' and was required to 'show a fair and just reason'" once the Report and Recommendation on change of plea was effectively adopted).

Therefore, in this case, Robinson could have moved to withdraw her plea for any reason or no reason before it was accepted by the District Court.  Specifically, she could have moved to withdraw her plea under Rule 11(d)(1) after the Magistrate Judge had accepted her plea but before the District Court had adopted the Report and Recommendation.  Here, although a withdrawal of her plea would have had certain consequences *vis a vis* the Government given her Plea Agreement, her right to withdraw her plea was otherwise intact.

Given that Robinson could withdraw her plea under Rule 11(d)(1) before the District Court accepted her plea, the Court next considers whether counsel failed to so advise her.  Although whether the failure to advise of the right to withdraw a plea could even constitute ineffective assistance is not well established,[4] the Court here does not reach this issue as the record is clear that she ***was*** advised of her right to withdraw her plea on multiple occasions.

Specifically, at the hearing, Mr. Nicholson testified that he did inform Robinson of her right to withdraw her plea because he "very specifically" discussed the paragraph of the Plea Agreement that concerned withdrawal of her guilty plea and how that would constitute a breach of the agreement she had with the Government.  ECF No. [31] at 41:8–15.  Mr. Nicholson testified that he "informed Ms. Robinson that this provision of the plea agreement had very specific

---

[4] Indeed, there is limited authority on the issue of counsel's obligation as to advising of the potential to withdraw a plea, specifically, "[a]n attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation." *Sims v. United States*, 785 Fed. App'x. 632, 634 (11th Cir. 2019) (citing *Chaidez v. United States*, 568 U.S. 342, 356 (2013)).  It should follow, then, that counsel does not act unreasonably in declining to advise of a right that his or her client *retains* after pleading guilty.  *See Davis v. United States*, No. 3:12-CV-1628 JCH, 2015 WL 1277011, at *15 (D. Conn. Mar. 20, 2015) ("While the court is not generally required [under Rule 11] to advise a defendant of every right he is giving up . . . it is all the more unfounded that a defendant should complain when a court does not advise him of a right that he retains.") (citation omitted); *see also United States v. Farrelly*, No. 3:19-CR-44-J-34PDB, 2021 WL 463767, at *3 (M.D. Fla. Feb. 9, 2021) ("[Movant] specifically alleges . . . that he was not told that he could withdraw his plea under Rule 11 for no reason or any reason at all.  And initially that was not a concern to me, because if [movant] had not asked to withdraw his guilty plea, there would have been no reason for his attorney to advise of that.").

consequences . . . if she later sought . . . to withdraw her plea" and that he "spent a considerable amount of time with her on this paragraph," and had "every reason to believe" that Robinson understood the paragraph, as they had reviewed it together on three occasions. *See id.* at 41:16–42:18. Because the Plea Agreement had a specific provision as to the consequences of withdrawing a plea, Mr. Nicholson's testimony rings particularly true, as he would have had to explain to her the right to withdraw her plea in order for any discussion of that provision to make any sense.

Indeed, Mr. Nicholson's testimony is consistent with Robinson's own statements while under oath during her plea colloquy. At her Plea Hearing, Robinson assured the Court of her understanding of the Plea Agreement, including paragraph 25, which states, "Defendant agrees that if she fails to comply with any of the provisions of this Agreement . . . or attempts to withdraw the plea (prior to or after pleading guilty to the charges identified . . . above), the Government will have the right to characterize such conduct as a breach of this Agreement." Criminal ECF No. [88] at 14; *see also* ECF No. [19-5] at 29–30 (During the plea colloquy, Robinson replied, "I do" when asked, "Do you understand and agree with paragraph 25, Dr. Robinson?"). Such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord United States v. Gonzalez–Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987) ("While Rule 11 is not insurmountable, there is a strong presumption that the statements made during the colloquy are true."). Because Robinson made statements under oath at a plea colloquy, "[s]he bears a heavy burden to show [her] statements were false." *United States v. Rogers,* 848 F.2d 166, 168 (11th Cir. 1988) (*per curiam*).

Mr. Nicholson's testimony is also consistent with his affidavit, as well as that of Mr. Del Toro, who also represented Petitioner before the trial court. *See* ECF Nos. [19-2] ¶¶ 9–14; [19-3]

¶ 5.  Like Mr. Nicholson, Mr. Del Toro recalled reviewing the Plea Agreement with Robinson in detail, including paragraph 25, which detailed the consequences of her withdrawal of the plea. ECF No. [19-3] ¶ 5.  Robinson's third attorney, Mr. Keith Alan II, indicated in his affidavit that he did not negotiate the Plea Agreement, did not recall attending the Plea Hearing, and therefore, did not recall discussing the Plea Agreement with Robinson.  ECF No. [19-4] ¶¶ 6–7.  However, Mr. Alan noted that he did not recall Robinson "demonstrating anything other than an effort to comply with the terms and conditions of the plea agreement" after the plea colloquy.  *Id.* ¶¶ 6–8.

The Court is not persuaded by Robinson's testimony at the hearing that she was not advised of her right to withdraw her plea after her hearing before the Magistrate Judge.  Throughout her testimony, Robinson made the blanket statement that she did not know she could withdraw her plea after the Magistrate Judge conducted her plea colloquy.  *See, e.g.*, ECF No. [31] at 29:7–19, 32:3–7, 36:23–37:10.  However, she repeatedly testified that she could not recall certain events, and that she felt as if everything was happening in "slow motion."  *See, e.g., id.* at 15:8–13, 18:16–18.  When asked whether she had reviewed the Plea Agreement before signing it, Robinson responded, "I don't recall" but then confirmed she has initialed and signed the Plea Agreement. *Id.* at 22:15–25.  In short, Robinson could recite without equivocation that she did not know she could withdraw her plea, but then when asked if she remembered any of the times that her counsel stated he did advise her of her right, she did not deny it and would simply state that she did not recall.  The Court found Robinson's testimony to be self-serving and lacking credibility.

Moreover, the record is clear that Robinson never expressed a desire to withdraw her plea. Robinson alleges in her briefing that counsel was aware that she regretted her decision to plead guilty, since she "sobbed" while in the car with her attorneys after deciding to plead guilty, and then "openly [wept]" with her "hands [] shaking" in the car with her attorneys after pleading guilty.

ECF No. [3] at 2, 4. However, she never alleges that she informed counsel of her desire to withdraw her plea, and the testimony of both Mr. Nicholson and Robinson corroborates this fact. Indeed, Robinson testified that she did not tell her attorneys that she wanted to withdraw her plea, stating, "[i]t was pointless to tell my attorneys since they are the ones who recommended the plea deal" and "I couldn't tell them that because I didn't know that I had that as an option." ECF No. [31] at 29:7–19. Mr. Nicholson likewise confirmed this at the hearing, noting that Robinson never communicated to him, in any way, that she wanted to withdraw her plea. *Id.* at 42:19–22.[5] Thus, there is no dispute that Robinson did not explicitly request to withdraw her plea, and courts have determined that counsel does not act unreasonably in failing to file a motion to withdraw a plea where a client does not clearly indicate such a desire. *See United States v. Scott*, 664 Fed. App'x. 232, 241–42 (3d Cir. 2016) (where client had made statements "about possibly withdrawing the plea" but had also expressed "indecision" about withdrawal, "[i]t did not fall below an objective standard of reasonableness for [counsel] to not withdraw the plea. . . if his client had not communicated *clear* desire to do so.") (emphasis added).

Accordingly, the undersigned finds no support for the proposition that counsel's performance was deficient under these circumstances. Robinson was informed of her right to withdraw her plea, and in fact, never expressed any desire to withdraw her plea to her lawyers. As such, Robinson's claim here should be denied.

**B. Robinson's Claim Of Ineffective Assistance For Counsel's Failure To Obtain A Continuance Should Be Denied As Conclusory And Lacking Foundation.**

Robinson also argues that counsel provided ineffective assistance by failing to obtain a continuance for trial, and that Robinson likely would have gone to trial instead of pleading guilty

---

[5] Indeed, this is not a case where Robinson attempted to withdraw her plea after the District Court adopted the Report and Recommendation and now claims that she was unaware that she could withdraw her plea (under a less stringent standard) before it was accepted by the District Court.

if counsel had obtained a continuance.  ECF No. [3] at 11–12.  Specifically, Robinson alleges that "Counsel's two motions for continuance were deficient in that they provided no evidence in support of the motions."  *Id.* at 11.  Robinson states that she bore the burden "to show good cause," even if the motions were unopposed, and that counsel failed to provide evidence to meet that burden.  *Id.* at 11–12.  Robinson acknowledges that counsel eventually submitted "detailed affidavits" in support of a continuance, but they did not accompany any motion and "were provided just days before jury selection."  *Id.* at 12 n.1.  She further contends that "Counsel's ineffectiveness directly led" Robinson to enter her guilty plea.  *Id.* at 12.

Robinson's conclusory assertions cannot overcome the strong presumption in favor of counsel's competence.  *See Chandler*, 218 F.3d at 1313–14.  Robinson states, without citing any authority for support, that "the Court likely would have granted the continuance" had counsel provided proper support rather than "naked arguments."  ECF No. [3] at 12.  However, as Robinson and the Government both acknowledge, counsel filed two motions for continuance, one of which was not opposed, as well as additional affidavits in support of the request.  Moreover, contrary to Robinson's argument that counsel "provided no evidence in support of the motions," *id.* at 11, counsel cited various reasons in arguing that a continuance was warranted, including (1) the complex nature of the charges and the years-long alleged scheme; (2) mere weeks for counsel to review a voluminous four-terabyte discovery record; (3) an inadequate period of time to obtain expert witnesses; and (4) the existence of "complex issues regarding privilege waivers" and "[a potential] reliance on counsel defense."  Criminal ECF No. [66] at 2–3.

Robinson sets forth nothing more than a conclusory allegation that is insufficient to grant the Movant any relief.  Using an objective standard, the undersigned cannot find that counsel's actions were unreasonable in the circumstances.  Counsel made the motion and cited specific

support for it.  There is nothing Robinson points out, nor could there be on this record, that could have been done and was not done.  The fact that the continuance was denied is hardly a basis for relief.  Indeed, there is a "general rule that trial courts have broad discretion to deny continuances and that not every restriction on counsel's ability to prepare for trial amounts to a Sixth Amendment violation."  *Hill v. Sec'y, Florida Dep't of Corr.*, No. 19-14379-E, 2020 WL 2160858, at *1 (11th Cir. Apr. 1, 2020) (citing *Morris v. Slappy*, 461 U.S. 1, 11 (1983)).

## IV.   CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1).  This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). However, when a district court has rejected a claim on procedural grounds, a petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*  Upon consideration of the record, this Court should deny a certificate of appealability.  Notwithstanding, if Robinson does not agree, she may bring this argument to the attention of the District Judge pursuant to the Objections section below.

## V.   RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that Robinson's Motion and Memorandum in Support of Motion Under 28 U.S.C. § 2255, ECF Nos. [1], [3], be

**DENIED**, and no certificate of appealability should be issued.

## VI.    OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3–1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on March 24, 2022.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**